**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DIONNA JOHNSON, Individually** | § | |
| **and As Next Friend of B.J., a Minor,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO._____** |
| | § | |
| | § | |
| **HOUSTON INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| *Defendant.* | § | **JURY TRIAL REQUESTED** |

<u>**PLAINTIFFS' ORIGINAL COMPLAINT**</u>

COMES NOW, Dionna Johnson ("Johnson") individually, and as next friend of B.J., a minor (collectively referred to herein as "Plaintiffs"), and file their Original Complaint complaining of Houston Independent School District (referred to herein as "Defendant" or "HISD"), and for causes of action Plaintiffs would respectfully show unto the Court the following:

**I.**
<u>**BRIEF INTRODUCTION**</u>

1.      Homelessness is a serious issue not only in Houston but the entire United States. Approximately 2.5 million children are homeless annually in the United States.  According to the National Center for Homeless Education, Texas is home to approximately ten percent of the country's homeless youth and children.  Children experiencing homelessness are nine times more likely to repeat a grade, three times more likely to be placed in special education, and four times more likely to drop out of school entirely.

2.      Public school is a place where homeless children have the opportunity to escape from their everyday stressors.  They go to engage with other students and to get an education in the hopes of eventually obtaining a brighter future.  These children turn to a public school's faculty members

for care, empathy, and understanding of their difficult situation outside of school.  These children do not anticipate being discriminated against based on their race, sex, gender, or socioeconomic status, nor being expelled from a public school which all children have the right to attend.

3.      In this case, B.J., a nine-year-old African American, homeless girl was discriminatorily denied the opportunity by HISD from receiving a public education because of her race, sex, and socioeconomic status.

## II.
## PARTIES

4.      Plaintiffs are residents of Harris County, Texas who may be served through their undersigned counsel.

5.      Defendant is a political subdivision of the State of Texas and is a local educational agency within the meaning of state and federal law.  Defendant may be served with process by serving its Superintendent, F. Mike Miles, at 4400 West 18th Street, Houston, Texas 77092, or wherever else it may be found.

## III.
## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.  This Court also has jurisdiction under 28 U.S.C. § 1343(a) because Plaintiffs seek damages for violations of their civil rights.  Supplemental jurisdiction over Plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Southern District of Texas.

## IV.
## <u>FACTUAL BACKGROUND</u>

8.      B.J. is a nine-year-old African American, homeless female.  She is the daughter of Johnson. Johnson suffers from various chronic illnesses which makes it difficult to hold permanent employment as she requires frequent medical care and rest.  Plaintiffs have been affected by periodic homelessness for a while.

9.      On or about October 10, 2023, Johnson enrolled B.J. at Kashmere Gardens Elementary School (the "School"), 4901 Lockwood Drive, Houston, Texas 77026, which is operated and managed by HISD.  The principal of Kashmere Gardens Elementary School at all relevant times was Marques Collins.  The superintendent of HISD at all relevant times was Mike Miles.

10.      At the time of enrollment, Johnson completed an HISD Student Assistance Questionnaire ("SAQ") where she indicated that she and B.J. were moving from place to place due to Johnson's illness, loss of employment, and eviction.  Johnson also indicated in the SAQ that B.J. required the following services: 1) enrollment assistance; 2) free lunch/breakfast; 3) transportation; 4) school supplies; 5) emergency clothing/uniforms; and 6) after-school care.

11.      At the time of enrollment, Johnson and B.J. were temporarily living in an AirBnB rental near the School.  To Johnson's understanding, HISD would provide transportation to and from the School for B.J., but that never happened.  Shortly after the time of B.J.'s enrollment, she and Johnson were forced to relocate again when their AirBnB rental expired.

12.      On multiple occasions after this change in residence, Johnson attempted to contact the School to update her current address and to secure transportation to and from school for B.J. Multiple messages were left for the School's Registrar and other personnel, but Johnson's calls and messages went unanswered.  Notwithstanding Johnson's efforts to provide an education for

B.J. while attempting to better their socioeconomic situation, the School took no interest or action in helping her or B.J.

13.    On or about October 20, 2023, only ten days after initially enrolling B.J. into the School, Mr. Collins called Johnson to notify her that B.J. was being withdrawn from the School due to her absences.  Johnson pled with Mr. Collins to provide more information about the School's decision, but Mr. Collins simply iterated repeatedly that B.J. was not welcome at the School and that she should not be brought back to the School.  During that conversation, Mr. Collins stated that the School "was not a babysitting service" and completely disregarded Johnson's concerns.  Mr. Collins' statements let Johnson know that her homeless, black daughter was not welcome at the School.  Mr. Collins continued to interrupt Johnson anytime she would attempt to speak regarding her daughter and the School's decision.  Mr. Collins took a male dominating position over Johnson as a female reiterating his actions could not be challenged by her.  Mr. Collins then hung up the phone with Johnson mid-call.

14.    Johnson subsequently learned that Mr. Collins unilaterally completed a HISD Student Withdrawal Record/Transfer Form on or around October 20, 2023, without any input or knowledge on behalf of Johnson.  In fact, the form only bears Mr. Collins' signature, glaringly missing the required signature of Johnson, B.J.'s parent.

15.    At no time before the unilateral withdrawal of B.J. did the School attempt to conference, contact, or communicate with Johnson to address issues or to formulate a plan so that B.J. could receive an education.  Instead, when Johnson appeared at the School on or about October 20, 2023, local police were called and she was arrested and jailed for eight days due to alleged threats she made to School administrators that her child would not be denied an education.  B.J. was

traumatized as she was thrown out of school at the same time as she watched her homeless mother be arrested and carried away to jail.

16.    Because of the actions of HISD, through its employees at the School, B.J. was forced to relocate to South Carolina with extended family as her mother addressed the criminal charges initiated by HISD and attempted to formulate future education plans for B.J. in Houston, Texas.

17.    Mr. Collins' statements to Johnson indicate his sex, race, ethnic, and socioeconomic bias towards both her and B.J.  Mr. Collins intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of his time.  Further, Johnson and B.J. were stereotyped by Mr. Collins as merely poor, homeless, black, female beggars attempting to waste public services.

18.    The School's Registrar and other personnel at the control of HISD similarly intentionally and discriminately refused to give Johnson or B.J. the light of day, ignoring calls for help and refusing services to Johnson and B.J. simply based on their sex, race, ethnicity, and socioeconomic bias, all of which in combination influence and supported HISD's actions to the determinant and injury of Plaintiffs.

19.    At all relevant times, Mr. Collins and all personnel at the School were empowered and working on behalf of HISD.  Defendant's actions, in whole or in part, were discriminatory, causing Plaintiffs damages as described herein.

### V.
### FIRST CAUSE OF ACTION

***Violation of the Fourteenth Amendment's Equal Protection Clause***
***Pursuant to 42 U.S.C. § 1983***
***(Intentional Race Discrimination)***

20.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

21.     The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying, "any person within its jurisdiction the equal protection of the laws." This direction requires all similarly situated persons to be treated alike. *Plyler v. Doe,* 457 U.S. 202, 210 (1982).

22.     Prohibited racial discrimination includes reliance on racial prejudice or stereotypes. *See, e.g., Batson v. Kentucky,* 476 U.S. 79, 104 (1986).

23.     A school's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a group constitutes intentional discrimination and violates the Equal Protection Clause of the Fourteenth Amendment.

24.     "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

25.     Mr. Collins directly told Johnson the School was not a babysitter. No time of day was given to Johnson or B.J. to assist in providing the services duly requested to help a struggling mother and child receive services guaranteed to them as citizens. Mr. Collins' statements let Johnson know that her black daughter who is homeless was not welcome at the School. Mr. Collins continued to interrupt Johnson anytime she would attempt to speak regarding her daughter and the School's decision. Mr. Collins took a male dominating position over Johnson as a female reiterating his actions could not be challenged by her. Mr. Collins then hung up the phone with Johnson mid-call.

26.     Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time. Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black, female beggars attempting to waste public services. Further, Johnson's numerous unanswered and unheeded calls

and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

27.     Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Johnson and B.J. of rights and privileges secured to them by the Fourth and Fourteenth Amendment to the United States Constitution and by other laws of the United States.

28.     The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under the due process clause of the United States Constitution, for which the Defendant is liable to them, pursuant to 42 U.S.C. § 1983 and for compensatory monetary damages.

<div align="center">

**VI.**
**SECOND CAUSE OF ACTION**

***Violation of the Fourteenth Amendment's Equal Protection Clause***
***Pursuant to 42 U.S.C. § 1983***
***(Intentional Race Discrimination)***

</div>

29.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

30.     Title VI of the Civil Rights Act of 1964 provides that recipients of federal financial assistance may not discriminate based on race, color, or national origin.  42 U.S.C. § 2000d.

31.     Defendant is a federal funded program or activity under 42 U.S.C. § 2000d.

32.     As a recipient of federal financial assistance, Defendant and all its programs and activities are subject to Title VI of the Civil Rights Act of 1964.

33.     Like the Fourteenth Amendment's Equal Protection Clause, Title VI bars intentional discrimination.  *See Alexander v. Choate*, 469 U.S. 287, 292-93 (1985); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 607-08 (1983); *Hollins*, 188 F.3d at 661-62.  A

recipient's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a particular group therefore violates both the Fourteenth Amendment and Title VI. 28 C.F.R. § 42.104(b).

34.    Mr. Collins directly told Johnson the School was not a babysitter. No time of day was given to Johnson or B.J. to assist in providing the services duly requested to help a struggling mother and child receive services guaranteed to them as citizens. Mr. Collins' statements let Johnson know that her black daughter who is homeless was not welcome at the School. Mr. Collins continued to interrupt Johnson anytime she would attempt to speak regarding her daughter and the School's decision. Mr. Collins took a male dominating position over Johnson as a female reiterating his actions could not be challenged by her. Mr. Collins then hung up the phone with Johnson mid-call.

35.    Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time. Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black, female beggars attempting to waste public services. Further, Johnson's numerous unanswered and unheeded calls and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

36.    Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Johnson and B.J. of rights and privileges secured to them by Title VI and Fourteenth Amendment to the United States Constitution and by other laws of the United States.

37.    The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under the due process clause of the United States Constitution, for which the

Defendant is liable to them, pursuant to 42 U.S.C. § 1983 and for compensatory monetary damages.

## VII.
## THIRD CAUSE OF ACTION

**Violation of the Fourteenth Amendment's Equal Protection Clause
Pursuant to 42 U.S.C. § 1983
(Sex Discrimination)**

38.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

39.    The Constitution prohibits sex classifications based on "overbroad generalizations about the different talents, capacities, or preferences of males and females." United States v. Virginia, 518 U.S. 515, 533 (1996); Miss. Univ. for Women v. Hogan, 458 U.S. 718 (1982) (invalidating school's policy that perpetuates a stereotyped view of proper roles of men and women).

40.    Any policy or rule that discriminates on the basis of gender must undergo, and pass muster under, an intermediate scrutiny analysis. *Craig v. Boren,* 429 U.S. 190, 197 (1976).

41.    Mr. Collins took a male dominating position over B.J. and Johnson as females.  He refused to be challenged by a woman, Johnson, as to his actions or to offer any compromise knowing that he maintained leverage over the two homeless females (Plaintiffs).  In his mind, they lacked the strength to challenge his authority.

42.    Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time.  Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black beggars, attempting to waste public services.  Further, Johnson's numerous unanswered and unheeded calls and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's

decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

43.    Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Jonson and B.J. of rights and privileges secured to them by the Fourteenth Amendment to the United States Constitution and by other laws of the United States.

44.    The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under the due process clause of the United States Constitution, for which the Defendant is liable to them, pursuant to 42 U.S.C. § 1983 and for compensatory monetary damages.

## VIII.
## FOURTH CAUSE OF ACTION

### Violation of Title IX
### Pursuant to 42 U.S.C. § 1983
### (Sex Discrimination)

45.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

46.    Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

47.    Like the Fourteenth Amendment's Equal Protection Clause, a plaintiff bringing a claim under Title IX may use either direct or circumstantial evidence of intentional discrimination. *Cf. Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

48.    Mr. Collins took a male dominating position over B.J. and Johnson as females.  He refused to be challenged by a woman, Johnson, as to his actions or to offer any compromise knowing that

he maintained leverage over the two homeless females (Plaintiffs).  In his mind, they lacked the strength to challenge his authority.

49.    Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time.  Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black beggars, attempting to waste public services.  Further, Johnson's numerous unanswered and unheeded calls and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

50.    Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Johnson and B.J. of rights and privileges secured to them by Title VI Fourteenth Amendment to the United States Constitution and by other laws of the United States.

51.    The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under the due process clause of the United States Constitution, for which the Defendant is liable to them, pursuant to 42 U.S.C. § 1983 and for compensatory monetary damages.

### IX.
### FIFTH CAUSE OF ACTION

**Violation of Texas Civil Practice and Remedies Code § 106.001**
**(Intentional Race Discrimination)**

52.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

53.    Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's race or color: (1) refuse to permit the

person to use facilities; (2) refuse to permit the person from participating in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person. *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)–(6).

54. Mr. Collins directly told Johnson the School was not a babysitter. No time of day was given to Johnson or B.J. to assist in providing the services duly requested to help a struggling mother and child receive services guaranteed to them as citizens. Mr. Collins' statements let Johnson know that her black daughter who is homeless was not welcome at the School. Mr. Collins continued to interrupt Johnson anytime she would attempt to speak regarding her daughter and the School's decision. Mr. Collins took a male dominating position over Johnson as a female reiterating his actions could not be challenged by her. Mr. Collins then hung up the phone with Johnson mid-call.

55. Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time. Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black, female beggars attempting to waste public services. Further, Johnson's numerous unanswered and unheeded calls and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

56. Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Johnson and B.J. of rights and privileges secured to them by Tex. Civ. Prac. & Rem. Code § 106.001.

57.     The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under Tex. Civ. Prac. & Rem. Code § 106.001, for which the Defendant is liable to them, pursuant to the same.

## X.
## SIXTH CAUSE OF ACTION

### Violation of Texas Civil Practice and Remedies Code § 106.001
### (Sex Discrimination)

58.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

59.     Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's sex: (1) refuse to permit the person to use facilities; (2) refuse to permit the person from participating in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person. *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)–(6).

60.     Mr. Collins took a male dominating position over B.J. and Johnson as females. He refused to be challenged by a woman, Johnson, as to his actions or to offer any compromise knowing that he maintained leverage over the two homeless females (Plaintiffs). In his mind, they lacked the strength to challenge his authority.

61.     Mr. Collins and the School's personnel intentionally and discriminately categorized Johnson and B.J. as unworthy of the benefits of HISD's services or of their time. Johnson and B.J. were stereotyped by the School's personnel as merely poor, homeless, black beggars, attempting to waste public services. Further, Johnson's numerous unanswered and unheeded calls and requests for help combined with B.J.'s short, ten-day enrollment at the School demonstrate HISD's

decision to preclude services specifically to both Ms. Johnson and B.J. were racially, sexually, and socioeconomically motivated.

62.    Defendant, both acting under color of law and acting pursuant to customs and policies of the district, deprived Johnson and B.J. of rights and privileges secured to them by Tex. Civ. Prac. & Rem. Code § 106.001.

63.    The acts and omissions of Defendant deprived Johnson and B.J. of their rights to life and liberty guaranteed under Tex. Civ. Prac. & Rem. Code § 106.001, for which the Defendant is liable to them, pursuant to the same.

## XI.
## RATIFICATION

64.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

65.    Defendant ratified the acts, omission, and customs of its personnel and staff.

66.    As a result, Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for the discrimination against Johnson and B.J.

## XII.
## DAMAGES

67.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

68.    As a direct and proximate result of the conduct of Defendant, Plaintiffs have suffered injuries and damages, for which they are entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

    a.    Physical pain in the past;

    b.    Physical pain in the future;

    c.      Mental anguish in the past;

    d.      Mental anguish in the future; and

    e.      Various out-of-pocket expenses incurred by Plaintiffs but for the acts and omissions of Defendant.

## XIII.
## PUNITIVE DAMAGES

69.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

70.    The acts of discrimination by Defendant, and its personnel referenced herein, shocks the conscience, and thus satisfies criteria for punitive damages as contemplated by Section 1983.

## XIV.
## ATTORNEY FEES

71.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

72.    It was necessary for Plaintiffs to retain the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988(b); 42 U.S.C. § 794a; 42 U.S.C. § 12131; 42 U.S.C. § 2000 et. Seq; and Tex. Civ. Prac. & Rem. Code § 106.002(b).

## XV.
## DEMAND FOR JURY TRIAL

73.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XVI.
## PRAYER

74.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendant and request an order including but not limited to the following relief:

a.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated the Fourteenth Amendment Equal Protection Clause by wrongfully discriminating against Johnson and B.J. based upon their race;

b.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Title VI of the Civil Rights Act by wrongfully discriminating against Johnson and B.J. based upon their race;

c.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated the Fourteenth Amendment Equal Protection Clause by wrongfully discriminating against Johnson and B.J. based upon their gender;

d.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Title VI of the Civil Rights Act by wrongfully discriminating against Johnson and B.J. based upon their gender;

e.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Violation of Texas Civil Practice and Remedies Code § 106.001 by wrongfully discriminating against Johnson and B.J. based upon their race;

f.    A judgment in favor of Plaintiffs as supported by a finding that Defendant violated Violation of Texas Civil Practice and Remedies Code § 106.001 by wrongfully discriminating against Johnson and B.J. based upon their gender;

g.    A judgment in favor of Plaintiffs in an amount sufficient to fully compensate them for the elements of damages enumerated above;

h.    An order directing Defendant to pay punitive damages;

i.    An order directing Defendant to take any and all other specific actions required by any and all the statutes noted above;

j.    An order declaring Plaintiffs as a prevailing party so that Defendant would be required to pay or reimburse Plaintiffs for all costs of preparation and trial of this cause of action, including, but not limited to, costs of representation, advocate fees, attorney fees, and expert witness fees incurred by them up to and through trial and for its appeal, if required pursuant to 42 U.S.C. § 1983 and §1988; together with pre-judgement and post-judgment interest, and court costs expended herein; and

k.    Such other relief as the Court may deem just and proper in law or in equity.


[signature block on next page]


PLAINTIFFS' ORIGINAL COMPLAINT                                          Page 16 of 17

Respectfully submitted,

**BIVONA LAW, PLLC**

<u>/s/ Andrew M. Bivona</u>
Andrew M. Bivona
State Bar Number: 24092138
SDTX Federal ID No.: 2979941
Asad S. Lakhani
State Bar Number: 24132315
SDTX Federal ID No.: 3862410
Sean M. Patterson
State Bar Number: 24073546
SDTX Federal ID No.:
1235 North Loop West, Suite 810
Houston, Texas 77008
Ph.: 713-360-7596
Fax: 713-742-2041
Email: drew@bivonalaw.com
Email: asad@bivonalaw.com
Email: sean@bivonalaw.com
**ATTORNEYS FOR PLAINTIFF**